# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **AMBER ASHLEY,** ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> **SOCIAL SECURITY** ) <br> **ADMINISTRATION,** ) <br> **COMMISSIONER,** ) <br> ) <br> Defendant. ) | Civil Action Number <br> **4:14-cv-02237-AKK** |

## MEMORANDUM OPINION

Amber Ashley brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. §405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that his decision – which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### I.  Procedural History

Ashley filed her application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income on October 21, 2010, alleging a disability

1

onset date of September 29, 2010, due to left hip and left leg injuries. (R. 369, 448). After the SSA denied her application, Ashley requested a hearing before an ALJ. (R. 369). The ALJ subsequently denied Ashley's claim, (R. 366, 383), which became the final decision of the Commissioner when the Appeals Council refused to grant review, (R. 1-4). Ashley then filed this action pursuant to §205(g) of the Act on November 19, 2014. Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ found that Ashley had not engaged in substantial gainful activity since September 29, 2010, and therefore met Step One. (R. 372). Next, the ALJ found that Ashley satisfied Step Two because she suffered from the "severe" impairments of left posterior wall acetabular

fracture; left femoral head impaction fracture; and left total hip arthroplasty. *Id*. The ALJ then proceeded to the next step and found that Ashley did not satisfy Step Three since she "does not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments." (R. 377). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, he proceeded to Step Four, where he determined that Ashley has the residual functional capacity (RFC) to:

> [P]erform sedentary work, where she can sit 1 hour at one time, stand 30 minutes at one time, and walk 30 minutes at one time. In an 8-hour work day, [Ashley] could sit 6 hours, stand 1 hour, and walk 1 hour…occasionally do reaching (overhead and all other types)…frequently use each hand for handling, fingering, feeling, and push/pull movements…frequently use her right foot and occasionally use her left foot for operation of foot controls…never climb ladders or stairs…occasionally balance and stoop, but should never kneel, crouch and crawl…[and] never work around unprotected heights.

(R. 378). In light of Ashley's RFC, the ALJ determined that Ashley "is unable to perform any past relevant work." (R. 381). Lastly, in Step Five, the ALJ considered Ashley's age, education, work experience, and RFC, and determined "there are jobs that exist in significant numbers in the national economy that [Ashley] can perform." (R. 382). Therefore, the ALJ found that Ashley had "not been under a disability, as defined in the Social Security Act, from September 29, 2010, through January 23, 2013." (R. 383).

## V.  Analysis

Ashley raises multiple contentions of error which the court will outline and address below.  None of the contentions, however, establishes that the ALJ committed reversible error.  Therefore, the court will affirm the ALJ's decision.

 1.  *Allegation that the ALJ's Decision is Not Supported by Substantial Evidence*

Ashley alleges that the ALJ's decision is not supported by substantial evidence because the ALJ (a) only considered some of her impairments, and (b) did not include a correct or full statement of Ashley's limitations and impairments in the hypothetical question to the vocational expert ("the VE").

(a) The ALJ properly considered all of Ashley's impairments

Ashley asserts first that the ALJ "focuse[d] on one aspect of the evidence while disregarding other contrary evidence."  S*ee* doc. 10 at 24 (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986)).  Allegedly, the ALJ only considered Ashley's left posterior wall acetabular fracture, left femoral head impaction fracture, and left hip arthroplasty impairments, and failed to consider her migraine headaches, asthma, anxiety, and the effects of her medications.  *Id*.  The record does not support Ashley's contention.  In fact, in addition to finding at Step Two that Ashley had "severe" impairments based on her left posterior wall acetabular fracture, left femoral head impaction fracture, and left total hip arthroplasty, the ALJ also considered Ashley's other impairments at Step Three.

6

In particular, the ALJ discusses Ashley's anxiety, migraine headaches, anemia, asthma, and psychotropic medications. (R. 376). However, the ALJ found that these impairments were "non-severe" and that Ashley failed to present any evidence that she experienced adverse side effects from her psychotropic medications. *Id.* Where, as here, the ALJ finds at least one severe impairment at Step Two and proceeds in Step Three to offer "specific and well-articulated findings" as to the effect of "all of the claimant's impairments, whether severe or not, in combination," such evidence is sufficient to establish that the ALJ properly considered all of Ashley's impairments. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010); *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). In other words, the record belies Ashley's contention that the ALJ failed to consider all of her impairments.

    (b) The ALJ included a correct and full statement of Ashley's limitations and impairments in the hypothetical question to the VE

The record also does not support Ashley's second contention that the ALJ relied on testimony from the VE that was not based on a correct or full statement of her limitations and impairments. Doc. 10 at 26. Although the ALJ is required to pose a hypothetical question to the VE that includes all of Ashley's limitations, *see Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999), the ALJ is not required to include findings that he has properly rejected as unsupported by the evidence, *see Crawford v. Comm'r of Soc. Sec*, 363 F.3d 1155, 1161 (11th Cir. 2004). Here, the

ALJ included all of the limitations assessed in Ashley's RFC. *See* (R. 378) (stating that in forming the limitations assessed in the RFC he "considered all symptoms and the extent to which [each] symptom [could] reasonably be accepted as consistent with the objective medical evidence, opinion evidence, and other evidence based on the requirements of the regulations"); *see also* (R. 438-439). Therefore, the ALJ committed no error, and his decision is supported by substantial evidence.

### 2. *Alleged Failure by the Appeals Council to Review, Remand and Consider the Medical Evidence Ashley submitted after the Date of the ALJ Decision*

Next, Ashley contends that the Appeals Council erred when it failed to review, remand her case to the ALJ, or consider new medical evidence she submitted. Doc. 10 at 28. At issue here are approximately ten visits to different practitioners from November 2012 to April 2014,[1] the bulk of which occurred after the ALJ issued his decision on January 23, 2013. (R. 366). Ashley asserts that the

---

[1] The new evidence includes records from: (1) Alabama Cancer Care: 4/24/13 - 8/5/13; (2) Gadsden Regional Medical Center: 4/20/13; (3) Dr. Thomas Thomasson: 11/21/12 – 4/23/13; (4) Dr. Jarrod Warren, Independent Medical Exam: 10/4/13; (5) Dr. Jarrod Warren, Physical Capacities Form: 10/4/13; (6) Mercy Medical Clinic 8/16/13 – 9/6/13; (7) Riverview Regional Medical Center: 11/25/13 – 2/3/14; (8) Gadsden Regional Medical Center: 9/22/13 – 11/20/13; (9) Alabama Cancer Care: 11/20/13 – 4/20/14; and (10) UAB Kirklin Clinic Hematology and Oncology: 3/13/14. Doc. 10 at 28. Although Ashley has submitted evidence of submission, it is unclear whether the Appeals Council received the records from Dr. Warren and Mercy Medical Clinic. *See* doc. 13-4.
   Ashley subsequently moved to supplement the record with submissions 1-6. *See* doc. 13. However, submissions 1-3 became a part of the record when the Appeals Council made Exhibits 18E and 19E part of the record in its denial of Ashley's request for review. *See* (R. 7, 569-570, 606-612). Therefore, Ashley's Motion to Supplement the Record, doc. 13, is **DENIED**, as to submissions 1-3, Exhibits A-C of the motion, because they are already part of the record. However, as to submissions 4-6, Exhibit D of the motion, the Motion to Supplement the record is **GRANTED**, and these documents are part of the record the court will consider in its review of Ashley's claims.

Appeals Council did not properly evaluate the new evidence because she obtained it after the date of the ALJ's decision and that the Appeals Council merely "perfunctorily adhered" to the ALJ's decision. *See* doc. 14.[2] Contrary to Ashley's contention, the Appeals Council, in fact, made the majority of the new evidence part of the record.[3] *See* (R. 7-8, 569-579, 606-612, 616-625). The Appeals Council also considered the reasons why Ashley disagreed with the ALJ's decision and the additional evidence listed on the enclosed Order of Appeals Council, which included the newly submitted evidence. *See* (R. 1-8, 569-579, 606-612, 616-625). Upon review, the Appeals Council explained that "this information does not provide a basis for changing the Administrative Law Judge's decision." (R. 1-2).

While Ashley may disagree with the Appeals Council decision, this disagreement does not mean that the Appeals Council failed to consider her new evidence. In fact, the Appeals Council stated unequivocally that it "considered" and "looked at" the new submissions and determined that the new information covered a later time and did not affect the decision about whether Ashley was

---

[2] Ashley also moved to remand the case "under either Sentence 4 or Sentence 6 because the Appeals Council failed to include chronologically relevant submissions in the record because they are dated after the date of denial by the ALJ." Doc. 14 at 1. The Motion to Remand is **DENIED** because Ashley's contention that the Appeals Council failed to include the new submissions in the record because they are dated after the date of the ALJ decision is without merit.
  Of the new submissions to the Appeals Council, submissions 1-3 and 7-10 were made part of the record by the Appeals Council as Exhibits 18E and 19E, *see* (R. 7, 569-570, 606-612), 21E, 22E, 23E, and 24E, *see* (R. 7-8, 616-625), respectively, even though they are dated after the date of the ALJ decision. Accordingly, Ashley's contention that submissions 4-6 were not included in the record solely because they were dated after the date of the ALJ decision is without merit because submissions 1-3 and 7-10, which are also dated after the ALJ's decision, were included in the record.

[3] Submissions 4-6 were not made part of the record by the appeals council, but by this court.

disabled beginning on or before January 23, 2013. (R. 1-2). This fact, plus the Appeals Councils decision to add the new evidence to the record, is sufficient to show that the Appeals Council adequately evaluated the new evidence. *See id*.

> 3. *Allegation that the Denial of Benefits is Not Supported by Substantial Evidence when the Evidence Submitted to the Appeals Council is Considered*

Ashley next contends that the denial of benefits is not supported by substantial evidence when the evidence she submitted to the Appeals Council is considered. Doc. 10 at 39. When a claimant properly submits additional evidence to the Appeals Council, a reviewing court must consider the entire record to determine whether the denial of benefits was substantially erroneous.[4] *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1262 (11th Cir. 2007). Therefore, "[b]ecause [Ashley] properly presented evidence to the Appeals Council, which actually considered it, the said new evidence forms part of the administrative record." *See Sevarit v. Colvin*, 989 F. Supp. 2d 1210, 1218 (N.D. Ala. 2013) (citing *Ingram,* 496 F.3d at 1269; (R. 1-8). Consequently, this court must consider whether the great weight of the evidence as a whole, including the new evidence presented to the Appeals Council, supported the ALJ's decision. *See Ingram* 496 F.3d at 1266–67 (remanding to the district court to determine whether the Appeals Council correctly found the ALJ's decision was not contrary to the weight of the evidence).

---

[4] The court considers submissions 4-6 in its review.

To support her contention of error, Ashley seemingly points specifically to evidence from Dr. Janie Teschner, a treating physician she saw at Mercy Medical Clinic, and Dr. Jarrod Warren, a doctor who performed an independent medical evaluation. Doc. 10 at 40. While acknowledging that she visited both doctors after the ALJ's decision, Ashley argues that "a treating physician's opinion is still entitled to significant weight notwithstanding that he did not treat the claimant until after the relevant determination date." *Id*. (citing *Boyd v. Heckler,* 704 F.2d 1207 (11th Cir. 1983)). Although Ashley is correct, she overlooks that Dr. Teschner's evidence, doc. 13-4 at 4-5, adds nothing new to the record for consideration. *See id.* (Dr. Teschner's diagnosis of existing left hip pain, anemia, respiratory problems, and other impairments, all of which the ALJ considered at Steps Two and Three). Next, as for Dr. Warren, he opined that Ashely had the physical capacity to sit for one hour at a time; stand for less than 30 minutes at a time; walk for less than 30 minutes at a time; and could lie down, sleep, or sit with her legs propped at waist level or above due to her medical conditions for 1-2 hours in an 8-hour daytime period. Doc. 13-4 at 4. Consequently, Ashley contends that the slightly stricter limitations Dr. Warren imposed establish that the ALJ's denial of disability and the RFC are not supported by substantial evidence. *See id*. at 4, 12-17; (R. 378). Unfortunately for Ashley, the opinion of a one-time examiner, like Dr. Warren, is not entitled to any special deference or consideration.

*See* 20 C.F.R. §§404.1502, 404.1527(c)(2); *Crawford*, 363 F.3d at 1160 (11th Cir. 2004); *see also Denomme v. Comm'r of Soc. Sec.*, 518 F.App'x 875, 877 (11th Cir. 2013) (holding ALJ does not have to defer to opinion of doctor who conducted single examination and who was not a treating doctor). Therefore, the ALJ did not err in rejecting Dr. Warren's opinion, especially since it is contrary to the great weight of the evidence. *See* Doc. 13-4 at 3-4, 11-17; *see also* (R. 378-381) (the preponderance of evidence, including reports from examining and treating physicians, as well as Ashley's admitted activities of daily living, do not support the degree of disabling pain and limitations presently asserted by Dr. Warren).

Ultimately, contrary to Ashley's contention, the new evidence does not contradict or indicate that any of her impairments are incapacitating or cause more than minimal functional limitations. To the contrary, the ALJ found that there was no evidence that Ashley's "non-severe impairments" caused more than minimal functional limitations or restrictions on her ability to perform basic work activities. (R. 376). Likewise, the new evidence does not rebut the ALJ's finding that the "severe" impairments concerning Ashley's left hip and left leg, rendered Ashley unlikely to do any type of standing job, (R. 380), but left open the possibility for jobs that require sitting. In fact, the ALJ's findings are consistent with the records of one of Ashley's treating physicians, Dr. Thomasson, who treated Ashley both before and after the ALJ decision, and opined that while it was unlikely Ashley

could do a standing type job, she could possibly perform a job that required her to sit.  *See* (R. 380); *see also Boyd,* 704 F.2d at 1207 (ALJ should give opinion of treating physician significant weight absent good cause).  Therefore, the court finds that the evidence on the record at the time of review by the ALJ, as well as now, does not reveal any opinions from medical experts or any other type of medical or psychological consultants which indicate that Ashley's impairments, alone or in combination, meet or equal a listing.  Accordingly, the denial of benefits is still supported by substantial evidence when the new evidence is considered.

> *4. Alleged Failure of the ALJ to Consider Ashley's Combination of Impairments in Determining Disability*

Finally, Ashley contends that the ALJ failed to consider the combined effects of her impairments.  Doc. 10 at 40.  However, because Ashley only raises this issue perfunctorily, the court cannot discern what record evidence Ashley is relying on to support her contention.  *See id*. at 40-45.  Rather than discussing how the ALJ failed to consider the combined effects of her impairments, Ashley simply notes that "the record clearly indicates that [she suffers] from a combination of impairments…."  *Id*. at 45.  The court disagrees because the ALJ clearly considered all of Ashley's impairments (whether severe or not), (R. 372-377), and determined that Ashley did not have an "impairment or combination of impairments, which meets or equals the criteria of any of the listed impairments described in [the Regulations]," (R. 377).  *See Jones v. Dep't. of Health & Human*

*Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (ALJ's finding that claimant did not have "an impairment *or combination of impairments* listed in, or medically equal to one [in the listings]" is sufficient to show that he considered the impairments in combination) (emphasis in original). Therefore, this contention is unavailing.

### VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Ashley is not disabled is supported by substantial evidence, and the ALJ applied the correct legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**.

**DONE** the 17th day of November, 2015.

*[signature]*
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE